IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff<br><br>v.<br><br>PANHANDLE EASTERN PIPE LINE COMPANY, LP,<br><br>    Defendant. | Civil Action No. 4:25-CV-01001 |

### THE UNITED STATES' ORIGINAL COMPLAINT

Plaintiff the United States of America, by the authority of the Attorney General of the United States, acting at the request of the Secretary of Transportation, files this complaint against Defendant Panhandle Eastern Pipe Line Company, LP.

### I.  PRELIMINARY STATEMENT

1. This is a civil action brought by the United States against Panhandle Eastern Pipe Line Company, LP (PEPL) for injunctive relief and civil penalties for violations of the federal pipeline safety laws codified in 49 U.S.C. § 60101, *et seq*. and regulations codified in 49 C.F.R. Part 192.

2. PEPL, a wholly owned subsidiary of Energy Transfer, LP, operates the Panhandle Eastern Pipe Line, a 6,200-mile interstate transmission line that delivers natural gas from (among other places) northern Texas and the Oklahoma panhandle to markets in the Midwest.

**The United States' Original Complaint – Page 1**

3. On March 26, 2020, an incident occurred on the Panhandle Eastern Pipe Line at the Borchers Station near Meade, Kansas, resulting in the death of a PEPL employee.

4. PHMSA's investigation indicates that PEPL failed to follow its manual of written procedures for conducting operations and maintenance activities at the Borchers Station in connection with the incident.

5. On June 15, 2023, PHMSA initiated an administrative enforcement proceeding against PEPL to recover civil penalties for the violations that led to the fatal gas pipeline incident at the Borchers Station.

6. On April 22, 2025, PHMSA terminated that administrative proceeding.

7. The United States seeks injunctive relief and civil penalties for Defendant's violation of the federal pipeline safety laws and regulations pursuant to the Pipeline Safety Act, 49 U.S.C. § 60120.

## II. JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction over this action pursuant to Sections 60120 and 60122 of the Pipeline Safety Act, 49 U.S.C. §§ 60120 and 60122, and 28 U.S.C. §§ 1331, 1345, and 1355.

9. Venue is proper in the Northern District of Texas under Section 60120 of the Pipeline Safety Act, 49 U.S.C. § 60120 and 28 U.S.C. §§ 1391(b)(1), (c)(2) and 1395(a) because PEPL resides in the Northern District of Texas and is headquartered in Dallas, Texas, where PEPL maintains its principal place of business.

## III.     PARTIES

10. Plaintiff the United States of America brings this action at the request of the Secretary of Transportation.  49 U.S.C. § 60120(a).

11. Defendant PEPL is a limited partnership organized under Delaware law and headquartered in Dallas, Texas.  PEPL is a wholly owned subsidiary of Energy Transfer LP, a limited partnership organized under Delaware law and headquartered in Dallas, Texas.  PEPL may be served at its principal place of business at 8111 Westchester Drive, Suite 600, Dallas, Texas 75225, through its registered agent.

12. Energy Transfer operates one of the largest natural gas pipeline systems in the United States, including approximately 20,090 miles of interstate natural gas pipelines.

13.  PEPL operates a pipeline system that consists of four large-diameter, bidirectional natural gas transmission lines, extending approximately 1,300 miles from producing areas in the Anadarko Basin of Texas, Oklahoma and Kansas through Missouri, Illinois, Indiana, Ohio, and into Michigan.

14. Energy Transfer and PEPL are operators of gas pipeline facilities subject to regulation by the Department of Transportation, through PHMSA, under various statutes and regulations applicable to the transportation of gas by pipeline.  49 U.S.C. § 60118(a); 49 C.F.R. Part 192.

15. PEPL is a "person" as defined in 49 U.S.C. § 60101(a)(17) and 49 C.F.R. § 192.3.

## IV. AUTHORITY

16. Authority to bring this action is vested in the United States Department of Justice under 49 U.S.C. § 60120(a)(1) and 28 U.S.C. §§ 516 and 519. Under section 60120(a), the United States may bring a civil action to enforce chapter 601 of Title 49 of the U.S. Code and to enforce a regulation prescribed under this chapter.

## V. FEDERAL PIPELINE SAFETY REGULATIONS

17. The purpose of the Pipeline Safety Act "is to provide adequate protection against risks to life and property posed by pipeline transportation and pipeline facilities by improving the regulatory and enforcement authority of the Secretary of Transportation." 49 U.S.C. § 60102(a)(1).

18. Section 60102(a) of the Pipeline Safety Act directs the Secretary of the Department of Transportation to "prescribe minimum safety standards for pipeline transportation and for pipeline facilities." 49 U.S.C. § 60102(a).

19. Under Chapter 601, PHMSA has promulgated regulations prescribing, among other things, minimum safety standards for the operation and maintenance of gas pipeline facilities.

20. As relevant here, these regulations are codified at 49 C.F.R. Part 192 (the "Federal Gas Pipeline Safety Regulations").

21. The Federal Gas Pipeline Safety Regulations contain requirements that apply to operators of gas pipeline facilities.

22.     The Federal Gas Pipeline Safety Regulations define "operator" as "a person who engages in the transportation of gas." 49 C.F.R. § 192.3. A "person" is defined for these purposes to include corporate entities, including "any . . . partnership." *Id.*

23.     The Federal Gas Pipeline Safety Regulations require that operators of gas pipeline facilities "prepare and follow . . . a manual of written procedures for conducting operations and maintenance activities and for emergency response." 49 C.F.R. § 192.605(a).

24.     The United States may bring an action to enforce the Federal Gas Pipeline Safety Regulations. 49 U.S.C. § 60120(a)(1). In such an action, the Court may award appropriate relief, including a temporary or permanent injunction, punitive damages, and civil penalties. *Id.* Moreover, civil actions to enforce the Federal Gas Pipeline Safety Regulations are not subject to the limitations on civil penalties at 49 U.S.C. § 60122, which only apply in PHMSA administrative proceedings. 49 U.S.C. § 60120(a)(1).

## VI.     FACTS

25.     PEPL and its parent company Energy Transfer are both "operator[s]," meaning persons "engage[d] in the transportation of gas." *See* 49 C.F.R. § 192.3. A "person" in this context means "any individual, firm, joint venture, [or] *partnership*." *Id.* (emphasis added).

26.     On March 26, 2020, a PEPL technician was fatally injured in the course and scope of his duties at PEPL's Borchers Station near Meade, Kansas.

27.     The PEPL technician was attempting to retrieve a 10-inch "cleaning pig" that became stuck in a partially pressurized receiving barrel at the Borchers Station due to

**The United States' Original Complaint – Page 5**

ice accumulation. A cleaning pig is an industry term for a cylindrical object that travels through the pipeline, removing deposits and contaminants like scale or rust.

28. The PEPL technician was attempting to break the ice in the receiving barrel using a stainless-steel rod. The PEPL technician broke the ice and caused the pig to become dislodged. The cleaning pig traveled out of the receiving barrel, striking the technician in the abdomen and seriously injuring him. The technician later died at the hospital from his injuries.

29. PHMSA investigators traveled onsite to investigate the incident.

30. PHMSA's investigation revealed that PEPL failed to follow its manual of written procedures in four areas.

31. First, PEPL's written procedure titled *Safety Procedure S-230, Hazardous Energy Control (Lockout Tagout) (Effective 08/01/2017)* requires the operator to de-energize the pipe prior to performance of scheduled activities.

32. On the day of the incident, PEPL failed to ensure that the piping at the pig receiver was clear of any hazardous energy and de-energized as required by PEPL's written procedure.

33. Second, PEPL's written procedure titled *Safety Procedure S-370 Work Permits (Effective 8/1/2017)* requires a "General Work Permit" for potentially hazardous work.

34. Prior to the incident, PEPL failed to obtain a "General Work Permit" that requires identification of all potential hazards and communication of those hazards to relevant personnel as required by PEPL's written procedure.

35. Third, PEPL's written procedure titled *Standard Operating Procedures, Pigging and Pig Trap Operation, Procedure: I.13 (Effective 5/1/2015)* includes several requirements for technicians who are engaged in pigging.

36. Section 7.2 of the pigging procedures states that personnel cannot "stand in front of the launcher or receiver door in the project path of the line-cleaning tool while opening."

37. On the day of the incident, a PEPL technician was standing in front of the receiver while trying to dislodge ice in violation of PEPL's written procedure.

38. Section 7.5 of the pigging procedures states that PEPL must "[v]erify the trap is depressured and that SOP B.06 Hazardous Energy Control and Safety Procedure S-230 Lockout Tag out are followed before opening the closure."

39. On the day of the incident a PEPL technician opened the closure without verifying that the trap was depressured in violation of PEPL's written procedure.

40. Fourth, PEPL's written procedure titled *Best Practice Clearing Freezes BP I.17(Effective 6/1/2013)* requires the technician to notify the operations manager, discuss the procedures to handle freezes, and to blowdown slowly on either side of the freeze to maintain a differential of 50 psi or less across the freeze, among other requirements.

41. On the day of the incident, PEPL personnel failed to make the requisite notification and attempted to clear the ice with a stainless-steel rod, which was not an approved method to clear freezes, in violation of PEPL's written procedure.

**CAUSE OF ACTION**
Civil Penalties Under the Federal Gas Pipeline Safety Regulations
49 U.S.C. § 60120(a)

42. The United States realleges and incorporates by reference each of the preceding paragraphs as if fully set forth in this paragraph.

43. PEPL is an "operator" within the meaning of 49 C.F.R. § 192.3.

44. The Federal Gas Pipeline Safety Regulations require that the "operator shall prepare and follow for each pipeline, a manual of written procedures for conducting operations and maintenance activities and for emergency response." 49 C.F.R. § 192.605(a).

45. As the operator of the gas pipeline facilities at the Borchers Station, PEPL had an obligation to prepare and follow a manual of written procedures for conducting operations and maintenance activities on the day of the incident. 49 U.S.C. § 60118(a).

46. PEPL failed to follow its manual of written procedures for conducting operations and maintenance activities at the Borchers Station in violation of 49 C.F.R. § 192.605(a).

47. PEPL's violation of 49 C.F.R. § 192.605(a) caused a cleaning pig to be ejected from a partially-pressurized receiver barrel at the Borcher Station, which struck and ultimately killed a PEPL employee.

### VII.   PRAYER FOR RELIEF

Accordingly, the United States respectfully requests from this Court the following relief:

1. For such injunctive relief as necessary to compel PEPL to take appropriate actions to ensure PEPL's continued compliance with the Pipeline Safety Act and the Federal Gas Pipeline Safety Regulations;

2. Assess civil penalties against PEPL in an amount appropriate to the nature, circumstances, and gravity of the violation; the violator's degree of culpability; good faith in attempting to comply with regulations; the economic benefit gained from the violations without any reduction because of subsequent damages; and other matters that justice requires; and

3. Award the United States its costs of suit herein and grant all other additional relief as the Court may deem appropriate.

Respectfully submitted this 22nd day of April, 2025.

CHAD E. MEACHAM
ACTING UNITED STATES ATTORNEY

*/s/ Saurabh Sharad*
Saurabh Sharad
New York Bar No. 5363825
George M. Padis
Texas Bar No. 24088173
Assistant United States Attorneys
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8600
Facsimile: 214-659-8807
saurabh.sharad@usdoj.gov
george.padis@usdoj.gov

Attorneys for the United States of America