IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| *Plaintiff/Counter-Defendant*, | § | |
| | § | |
| *v.* | § | Civil Action No. 3:25-cv-01001 |
| | § | |
| PANHANDLE EASTERN PIPELINE COMPANY, LP, | § | |
| | § | |
| *Defendant/Counterclaimant*. | § | |

## DEFENDANT'S ANSWER TO
## PLAINTIFF'S ORIGINAL COMPLAINT AND COUNTERCLAIM

TO THE HONORABLE SAM A. LINDSAY, UNITED STATES DISTRICT JUDGE:

Defendant Panhandle Eastern Pipe Line Co., LP ("PEPL") respectfully files this Answer to the Original Complaint (ECF 1) and Counterclaim seeking a declaratory judgment that the Pipeline Safety Act unconstitutionally delegates legislative power to the Pipeline and Hazardous Materials Safety Administration ("PHMSA"). PEPL responds to the allegations in the Complaint as follows:

### I.    "PRELIMINARY STATEMENT"

1.      PEPL admits that this is a civil action brought against it by the United States ("Plaintiff"), but denies that Plaintiff is entitled to any relief or that PEPL has violated any law.

2.      PEPL admits that it is a wholly owned subsidiary of Energy Transfer, LP ("Energy Transfer") and operates the Panhandle Eastern Pipe Line. PEPL also admits that the Panhandle Eastern Pipe Line traverses Texas, Oklahoma, and States in the Midwest. The remainder of the allegations in this paragraph are denied.

3.    PEPL admits that an incident occurred on March 26, 2020 at the Borchers Station near Meade, Kansas, resulting in the death of a PEPL employee.  The remainder of the allegations in ¶ 3 are denied.

4.    Denied.

5.    PEPL admits that on June 15, 2023, PHMSA initiated an administrative enforcement action against PEPL to recover civil penalties.  The rest of the allegations in ¶ 5 are denied.

6.    PEPL admits that PHMSA terminated its administrative proceeding on April 22, 2025, as a result of a lawsuit PEPL filed against PHMSA in this District, alleging, *inter alia*, that PHMSA's administrative proceeding violated PEPL's due process rights and Seventh Amendment right to a jury trial and was based on an unconstitutional delegation of legislative power.

7.    Paragraph 7 purports to characterize Plaintiff's claims, so no response is required. To the extent a response is required, PEPL denies that it violated any law and denies that Plaintiff is entitled to any relief.

## II.    "JURISDICTION AND VENUE"

8.    Paragraph 8 consists of legal conclusions to which no response is required. To the extent a further response is required, the allegations in ¶ 8 are denied and do not entitle Plaintiff to any relief against PEPL.

9.    PEPL admits that it is headquartered in Dallas, Texas.  The rest of ¶ 9 consists of legal conclusions to which no response is required.  To the extent a further response is required, the allegations in ¶ 9 are denied and do not entitle Plaintiff to any relief against PEPL.

### III. "PARTIES"

10.     PEPL is without information or knowledge sufficient to form a belief as to the allegations in ¶ 10 and therefore denies the same.

11.     Admit.

12.     Admit.

13.     Admit.

14.     Paragraph 14 consists of legal conclusions to which no response is required.

15.     Paragraph 15 consists of legal conclusions to which no response is required.

### IV. "AUTHORITY"

16.     Paragraph 16 consists of legal conclusions to which no response is required.

### V. "FEDERAL PIPELINE SAFETY REGULATIONS"

17.     Paragraph 17 purports to characterize the Pipeline Safety Act. That statute speaks for itself and is the best evidence of its contents. To the extent a further response is required, the allegations in ¶ 17 are denied and do not entitle Plaintiff to any relief against PEPL.

18.     Paragraph 18 purports to characterize the Pipeline Safety Act. That statute speaks for itself and is the best evidence of its contents. To the extent a further response is required, the allegations in ¶ 18 are denied and do not entitle Plaintiff to any relief against PEPL.

19.     Paragraph 19 purports to characterize the Pipeline Safety Act and PHMSA's regulations issued thereunder. Those authorities speak for themselves and are the best evidence of their contents. To the extent a further response is required, the allegations in ¶ 19 are denied and do not entitle Plaintiff to any relief against PEPL.

20.     Paragraph 20 purports to characterize PHMSA regulations.  Those regulations speak for themselves and are the best evidence of their contents.  To the extent a further response is required, the allegations in ¶ 20 are denied and do not entitle Plaintiff to any relief against PEPL.

21.     Paragraph 21 purports to characterize PHMSA regulations.  Those regulations speak for themselves and are the best evidence of their contents.  To the extent a further response is required, the allegations in ¶ 21 are denied and do not entitle Plaintiff to any relief against PEPL.

22.     Paragraph 22 purports to characterize PHMSA regulations.  Those regulations speak for themselves and are the best evidence of their contents.  To the extent a further response is required, the allegations in ¶ 22 are denied and do not entitle Plaintiff to any relief against PEPL.

23.     Paragraph 23 purports to characterize PHMSA regulations.  Those regulations speak for themselves and are the best evidence of their contents.  To the extent a further response is required, the allegations in ¶ 23 are denied and do not entitle Plaintiff to any relief against PEPL.

24.     Paragraph 24 purports to characterize the Pipeline Safety Act.  The statute speaks for itself and is the best evidence of its contents.  To the extent a further response is required, the allegations in ¶ 24 are denied and do not entitle Plaintiff to any relief against PEPL.

## VI.    "FACTS"

25.     Paragraph 25 consists of legal conclusions to which no response is required.  To the extent a further response is required, the allegations in ¶ 25 are denied and do not entitle Plaintiff to any relief against PEPL.

26.     PEPL admits that a PEPL employee was fatally injured on March 26, 2020 at PEPL's Borchers Station near Meade, Kansas.

27.     PEPL admits that the PEPL technician was attempting to retrieve a 10-inch cleaning pig from a receiving barrel.  PEPL also admits that a "cleaning pig" is an industry term for a

cylindrical object that travels through the pipeline to remove deposits.  The remainder of the allegations in ¶ 27 are denied.

28.    PEPL admits that the cleaning pig traveled out of the receiving barrel, struck the technician in the abdomen, and fatally injured him. The remainder of the allegations in ¶ 28 are denied.

29.    Admit.

30.    Denied.

31.    The allegations purport to characterize PEPL's written procedures.  Those procedures speak for themselves and are the best evidence of their contents.  To the extent a further response is required, the allegations in ¶ 31 are denied and do not entitle Plaintiff to any relief against PEPL.

32.    Denied.

33.    The allegations purport to characterize PEPL's written procedures.  Those procedures speak for themselves and are the best evidence of their contents.  To the extent a further response is required, the allegations in ¶ 33 are denied and do not entitle Plaintiff to any relief against PEPL.

34.    Denied.

35.    The allegations purport to characterize PEPL's written procedures.  Those procedures speak for themselves and are the best evidence of their contents.  To the extent a further response is required, the allegations in ¶ 35 are denied and do not entitle Plaintiff to any relief against PEPL.

36.    The allegations purport to characterize PEPL's written procedures.  Those procedures speak for themselves and are the best evidence of their contents. To the extent a further

response is required, the allegations in ¶ 36 are denied and do not entitle Plaintiff to any relief against PEPL.

37.     Denied.

38.     The allegations purport to characterize PEPL's written procedures.  Those procedures speak for themselves and are the best evidence of their contents.  To the extent a further response is required, the allegations in ¶ 38 are denied and do not entitle Plaintiff to any relief against PEPL.

39.     Denied.

40.     The allegations purport to characterize PEPL's written procedures.  Those procedures speak for themselves and are the best evidence of their contents.  To the extent a further response is required, the allegations in ¶ 40 are denied and do not entitle Plaintiff to any relief against PEPL.

41.     Denied.

### VII.    "CAUSE OF ACTION"

42.     PEPL reincorporates the answers to allegations in the preceding paragraphs.

43.     Paragraph 43 is a conclusion of law to which no response is required.

44.     Paragraph 44 purports to characterize federal regulations.  Those regulations speak for themselves and are the best evidence of their contents.  To the extent a further response is required, the allegations in ¶ 44 are denied and do not entitle Plaintiff to any relief against PEPL.

45.     Paragraph 45 consists of conclusions of law to which no response is required.  To the extent a further response is required, the allegations in ¶ 45 are denied and do not entitle Plaintiff to any relief against PEPL.

46.     Paragraph 46 consists of conclusions of law to which no response is required.  To the extent a further response is required, the allegations in ¶ 46 are denied and do not entitle Plaintiff to any relief against PEPL.

47.     Paragraph 47 consists of conclusions of law to which no response is required.  To the extent a further response is required, the allegations in ¶ 47 are denied and do not entitle Plaintiff to any relief against PEPL.

## VIII.    "PRAYER FOR RELIEF"

Paragraphs 1–3 characterize Plaintiff's prayer for relief, to which no response is required.

## DEFENSES

To the extent not expressly admitted above, PEPL denies every material allegation in Plaintiff's Original Complaint and demands strict proof thereof.  Without accepting any burdens not otherwise imposed upon PEPL by law, PEPL offers the following additional defenses:

## AFFIRMATIVE DEFENSES

PEPL alleges the following affirmative defenses to Plaintiff's Complaint, without assuming the burden of proof where such burden is otherwise on the Plaintiff, under applicable substantive or procedural law.  PEPL reserves the right to amend or supplement its affirmative defenses.

I.      Plaintiff's claims are barred, in whole or in part, by Article I of the United States Constitution because the Pipeline Safety Act unconstitutionally delegates legislative power to PHMSA to pursue an enforcement action either in an administrative forum or in an Article III court without an intelligible principle to guide its choice.

II.     Plaintiff's claims are barred, in whole or in part, by the Due Process Clause of the Fifth Amendment to the United States Constitution because the factual allegations result from improprieties in PHMSA's investigatory actions.

III.     Plaintiff's claims for relief are barred, in whole or in part, by the Eighth Amendment to the United States Constitution because Plaintiff seeks to impose excessive fines that are grossly disproportional to the gravity of the alleged violation.

IV.     Plaintiff's claims for relief are barred, in whole or in part, because they are overbroad, not sufficiently limited in scope to avoid an unreasonably punitive effect, and are unnecessary to secure prompt compliance.

V.     Plaintiff's claims for relief are barred, in whole or in part, for failure to state a claim upon which relief can be granted.

VI.     Plaintiff's claims for relief are barred, in whole or in part, by laches because Plaintiff unreasonably delayed bringing this action in federal court, which prejudiced PEPL.

VII.     Plaintiff's claims for relief are barred, in whole or in part, by unclean hands because of PHMSA's improprieties in the investigatory phase of the underlying enforcement proceeding.

VIII.     Plaintiff's claims for relief are barred, in whole or in part, because any alleged improper conduct is excused by necessity and impossibility.

IX.     Plaintiff's claims for relief are barred, in whole or in part, by the doctrines of estoppel, waiver, and acquiescence, because in the years prior to this action, Plaintiff had knowledge of the relevant facts underlying its claim and the opportunity to assert or address those claims in federal court but failed to take any action against PEPL in federal court.  PEPL has relied upon Plaintiff's representations, findings, actions, and inactions to its detriment.

X.     Plaintiff's claims for relief are barred, in whole or in part, because the regulations underlying Plaintiff's allegations are not authorized by statute.

XI.     Plaintiff's claims for relief are barred, in whole or in part, because the regulations are unconstitutionally vague and ambiguous.

XII.    Plaintiff's claims for relief are barred, in whole or in part, because Plaintiff has prosecuted this action with vindicative or retaliatory intent.

XIII.    Plaintiff's claims for relief are barred, in whole or in part, by the Equal Protection Clause of the Fourteenth Amendment because Plaintiff has intentionally and arbitrarily treated PEPL differently from others similarly situated with regard to enforcement of the Pipeline Safety Act.

XIV.    The injunctive relief sought by Plaintiff is barred, in whole or in part, by principles of mootness.

XV.    Plaintiff's claims for relief are barred, in whole or in part, because Plaintiff's commencement and prosecution of this action is arbitrary and capricious, an abuse of discretion, and contrary to law.

XVI.    The Court should dismiss Plaintiff's claims against PEPL with prejudice and grant PEPL such other and further relief to which it is entitled.

## COUNTERCLAIM

Defendant/Counterclaimant PEPL brings the following counterclaim against Plaintiff/Counter-Defendant the United States of America, and states as follows:

## INTRODUCTION

1.    This suit seeks to declare provisions of the Pipeline Safety Act unconstitutional under Article I of the United States Constitution because Congress delegated significant legislative power to the Department of Transportation[1] without providing the agency intelligible principles by which to exercise such power.  Specifically, Congress has granted PHMSA discretion to bring an enforcement action to an in-house agency proceeding or to an Article III court without providing

_____

[1] The Department of Transportation then delegated that power to PHMSA.  *See* 49 C.F.R. § 1.97(a).

an intelligible principle to guide the agency's discretion in choosing a forum.  Under the controlling law of this Circuit, that is an unconstitutional delegation of legislative power.

2.      PEPL operates the Panhandle Eastern Pipe Line, an interstate pipeline system that delivers natural gas from wells in Texas and nearby States to markets in the Midwest.  In 2020, a tragic accident at PEPL's Borchers Station near Meade, Kansas, resulted in the death of an employee.

3.      On June 15, 2023, PHMSA's Houston, Texas-based Director of the Southwest Region, Bryan Lethcoe, issued a Notice of Probable Violation ("NOPV") to PEPL, addressed to its parent company, Energy Transfer, in Dallas, Texas.  PHMSA alleged that PEPL violated certain pipeline safety regulations by failing to follow PEPL's internal manual of written procedures for pipeline operations, and that those alleged failures were either a causal factor in the incident or increased the severity of the incident.

4.      Although PEPL strongly disagrees with the allegations PHMSA has levied against it, and will contest those allegations as per its affirmative defenses, its counterclaim is not about the merits of those allegations.  Instead, the claim challenges PHMSA's actions pursuant to the Pipeline Safety Act, which unconstitutionally delegates legislative power to PHMSA to pursue an enforcement action either in an administrative forum or in an Article III court without an intelligible principle to guide its choice.

5.      The Fifth Circuit in *Jarkesy v. SEC* ("*Jarkesy I*") held that a statutory scheme violates the United States Constitution when it authorizes an administrative agency to bring an enforcement action in either an in-house agency proceeding or an Article III court without providing an intelligible principle to guide the agency's discretion in selecting a forum.  34 F.4th

446, 462–63 (5th Cir. 2022).[2]    PHMSA's enforcement scheme suffers from that same constitutional defect.  Under the Pipeline Safety Act, Congress authorized PHMSA to institute enforcement proceedings for civil monetary penalties either in house, 49 U.S.C. § 60122, or in federal district court, *id.* § 60120.  Congress, however, "said nothing at all" indicating how PHMSA should decide which forum to utilize in any given case.  *Jarkesy I*, 34 F.4th at 462.  That is "impermissible under the Constitution."  *Id.*

6.    PEPL is entitled to a judgment declaring that the Pipeline Safety Act's enforcement provisions are unconstitutional.

## JURISDICTION AND VENUE

7.    This Court has competent subject-matter jurisdiction under 28 U.S.C. § 1331 because PEPL's counterclaim arises under the United States Constitution.

8.    This Court has authority to grant declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201.

9.    Venue is proper in this Court because PEPL maintains its principal place of business and is headquartered in Dallas, Texas.  *See* 28 U.S.C. § 1391(e)(1)(C).

## PARTIES

### A.    PEPL

10.    PEPL is a limited partnership organized under Delaware law and headquartered in Dallas, Texas.  PEPL operates the Panhandle Eastern Pipe Line, an interstate pipeline system that delivers natural gas from northern Texas to markets in the Midwest.  PEPL is a subsidiary of Energy Transfer, which is one of North America's largest and most diversified midstream energy

---

[2] The Fifth Circuit's decision in *Jarkesy I* regarding the nondelegation doctrine was untouched by the Supreme Court's decision in *SEC v. Jarkesy* ("*Jarkesy II*"), 603 U.S. 109 (2024), and thus remains binding law in the Fifth Circuit and this District.

companies.  Energy Transfer owns more than 130,000 miles of pipelines and associated energy infrastructure in forty-four states.  Energy Transfer also is headquartered in Dallas, Texas.

### B.    The United States of America

11.    The United States of America brought this federal enforcement action on behalf of PHMSA, which has delegated authority from the Secretary of the Department of Transportation to establish and enforce federal pipeline safety laws and regulations.  *See* 49 U.S.C. § 60102; 108; 49 C.F.R. § 1.97(a).

## STANDING

12.    PEPL has Article III standing to pursue the counterclaim as stated herein.

13.    "To establish Article III standing, a plaintiff must show" that it [1] "has suffered an 'injury in fact' that is [2] 'fairly traceable' to the defendant's conduct and [3] would likely be 'redressed by a favorable decision.'"  *Collins v. Yellen*, 594 U.S. 220, 242 (2021) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 551, 560–61 (1992)).

14.    With respect to the injury-in-fact requirement, PEPL has already incurred significant legal fees defending against two unconstitutional enforcement proceedings arising from the same incident.  This type of "pocketbook injury is a prototypical form of injury in fact."  *Collins*, 594 U.S. at 243; *see Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 586 (5th Cir. 2006) ("[E]conomic injury is a quintessential injury upon which to base standing.").

15.    Those enforcement actions have inflicted, and are continuing to inflict, significant reputational injuries for PEPL.  Reputational injuries are injuries-in-fact for purposes of Article III standing.  *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) ("reputational harms" are sufficient to constitute an injury for purposes of Article III standing); *Meese v. Keene*, 481 U.S. 465, 473–75 (1987) (plaintiff had standing to challenge government action that "would adversely

affect his reputation in the community"); *Robertson v. Colvin*, 564 F. App'x 931, 934 (10th Cir. 2014) ("[I]njury to one's reputation can be a cognizable injury-in-fact to confer standing to bring suit."); *Nat'l Collegiate Athletic Ass'n v. Governor of N.J.*, 730 F.3d 208, 220 (3d Cir. 2013) ("[R]eputational harm is a cognizable injury in fact."), *abrogated on other grounds sub. nom Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453 (2018).

16.     There is a clear and direct causal connection between PEPL's injuries and this enforcement action.  All of PEPL's injuries are attributable to and were or will be inflicted by the United States through its enforcement of an unconstitutional statute that delegates significant legislative power without requisite guidance.

17.     PEPL's injuries are redressable through this claim because this Court can and should declare that Congress impermissibly delegated legislative power to the Department of Transportation and PHMSA, necessarily rendering any enforcement proceeding arising under the Pipeline Safety Act null and void.

## FACTS

### A.    PHMSA's Regulatory Powers

18.     PHMSA has authority to establish minimum safety standards for pipeline transportation and for pipeline facilities.  *See* 49 U.S.C. § 60102(a)(2).

19.     Under these regulatory powers, PHMSA has promulgated an extensive set of requirements all operators must follow for the operation and maintenance of pipeline facilities. *See* 49 C.F.R. §§ 192.601–756.  Operators must also prepare and follow, for each pipeline, a manual of written procedures for conducting operations and maintenance activities and for emergency response.  *Id.* § 192.605(a).

### B.    PHMSA's Enforcement Powers

20.    PHMSA may institute an enforcement action against a party that is alleged to have violated a federal pipeline safety law, regulation, or order.  Congress has authorized PHMSA to initiate such an action either through an in-house agency proceeding or in federal district court.  *See* 49 U.S.C. § 60120, 60122; *see also* 49 C.F.R. §§ 190.221, 190.235.  Congress, however, has not provided any standard to guide the agency in deciding which forum to utilize.

21.    PHMSA is empowered by statute to pursue civil monetary penalties against an enforcement target.  *See* 49 U.S.C. §§ 60120, 60122; 49 C.F.R. § 190.221.  When determining the amount of a civil penalty, PHMSA <u>must</u> consider:

> [1] the nature, circumstances, and gravity of the violation, including adverse impact on the environment; [2] the degree of culpability [of the violator], any history of prior violations, and any effect on ability to continue doing business; [3] good faith in attempting to comply; and [4] self-disclosure and correction of violations, or actions to correct a violation, prior to discovery by the Pipeline and Hazardous Materials Safety Administration.

49 U.S.C. § 60122(b)(1).  In addition, PHMSA <u>may</u> consider "[5] the economic benefit gained from the violation without any reduction because of subsequent damages; and [6] other matters that justice requires."  *Id.* § 60122(b)(2); *see also id.* § 60120 (requiring consideration of the same factors when seeking a civil penalty in an enforcement proceeding initiated in federal court).

22.    When taking enforcement action through an in-house proceeding, PHMSA initiates the proceeding by issuing a notice to the enforcement target.  *See* 49 C.F.R. § 190.206 (notice of amendment to required plans or procedures); *id.* § 190.207 (NOPV); *id.* § 190.233 (notice of intention to issue a corrective action order); *id.* § 190.239 (notice of proposed safety order).

23.    When PHMSA issues an NOPV to the enforcement target, the notice must include a "[s]tatement of the provision of the laws, regulations or orders" that the target is alleged to have violated and "a statement of the evidence upon which the allegations are based."  *Id.* § 190.207(b)(1).  If a civil penalty is proposed, the notice must include the amount of the proposed

penalty and the maximum civil penalty allowed under law. *Id.* § 190.207(b)(3).

24.     In an in-house proceeding, the maximum penalty is "$272,926 for each violation for each day the violation continues, with a maximum administrative civil penalty not to exceed $2,729,245 for any related series of violations." *Id.* § 190.223(a); *see Revisions to Civil Penalty Amounts, 2025*, 89 Fed. Reg. 106,282, 106,294 (Dec. 30, 2024); *see also* 49 U.S.C. § 60122(a)(1). Additional penalties may apply for specific types of violations. *See, e.g.*, 49 C.F.R. § 190.223(c) (providing for additional penalties for violating a standard for liquified natural gas pipeline facilities).

25.     An enforcement target who chooses to contest an NOPV may submit a written response to the allegations or request a hearing. *Id.* §§ 190.208(a)(3), (a)(4), (b)(3), (b)(4); *id.* § 190.211. An enforcement target also is entitled to the case file for its enforcement proceeding. *Id.* § 190.209(a). The PIPES Act of 2020[3] requires that a case file contain "all agency records pertinent to the matters of fact and law asserted." 49 U.S.C. § 60117(b)(1)(C).

26.     The hearings are held before a Presiding Official, who is a PHMSA employee. *See* 49 C.F.R. § 190.212(a). Specifically, Presiding Officials are attorneys who are on the staff of PHMSA's Deputy Chief Counsel. *Id.* On information and belief, Presiding Officials are the functional equivalent of Administrative Law Judges used in other agencies and operate as inferior officers under Article II of the United States Constitution. *See Lucia v. SEC*, 585 U.S. 237, 241 (2018).

27.     Few regulations speak to the PHMSA hearing process, and they provide very little guidance with regard to hearing administration and procedure or the due process rights of

---

[3] Protecting Our Infrastructure of Pipelines and Enhancing Safety Act of 2020, Pub. L. No. 116-260, 134 Stat. 1182, 2221 (Dec. 27, 2020).

enforcement targets.  *See, e.g.*, 49 C.F.R. §§ 190.211, 190.212.  Similarly, PHMSA's published manual regarding the procedure for conducting a hearing spans a scant one page.  *See* PHMSA, *Administrative Enforcement Processes* 46 (Dec. 5, 2024).[4]

28.     On May 29, 2025, PHMSA published a new guidance document directing the Office of Pipeline Safety "to revise its procedures for determining the contents of the case file in a pipeline safety enforcement proceeding" in light of the PIPES Act of 2020.  *See* Memorandum from Keith J. Coyle, Chief Counsel, PHMSA, to Linda Daugherty, Acting Associate Administrator for Pipeline Safety, PHMSA, at 5 (May 29, 2025).[5]  This directive does not resolve all of the improprieties of PHMSA's investigation and proceeding in this matter and, in any event, is merely advisory and non-binding on the agency.  *See id.* at 2.

29.     Indeed, PHMSA's regulations place very few constraints on the agency's actions and provide very few (if any) due process protections for the enforcement target.  Under the regulations, "[t]he hearing is conducted informally without strict adherence to rules of evidence." 49 C.F.R. § 190.211(e); *see also* PHMSA, *Administrative Enforcement Processes* at 46 ("All PHMSA hearings are considered 'informal adjudications,' meaning that they do not adhere to the formal procedures used by courts or strict rules of evidence.").  These informal proceedings raise a host of concerns involving due process and fair notice.  For example, in PEPL's experience, PHMSA has refused to put relevant evidence into the case file, withheld relevant evidence from PEPL, failed to disclose the agency's witnesses before the hearing, and failed to provide PEPL adequate opportunity to call and cross-examine adverse witnesses.  Additionally, on information

---

[4] Available at https://perma.cc/G3RT-SJJH.
[5] Available at https://perma.cc/9NAM-QCNF.

and belief, members of PHMSA's enforcement staff engage in *ex parte* communications with the Presiding Official, despite a regulation prohibiting such communications.  49 C.F.R. § 190.210(b).

30.    After the hearing, the Presiding Official will prepare a recommended decision.  *Id.* § 190.211(h).  The recommended decision is forwarded to PHMSA's Associate Administrator, who "considers the case file and issues a final order."  *Id.* § 190.213(a); *see id.* § 190.211(h). Critically, the enforcement target is not provided a copy of the recommended decision, and there is no record provided through which the enforcement target can determine whether the final order is substantively different from the Presiding Official's recommended decision.  PHMSA's operating procedures are contrary to the Administrative Procedure Act, 5 U.S.C. § 706(2)(D), and do not afford an enforcement target due process.

31.    Once a final order is issued, an enforcement target may petition an appropriate United States court of appeals for judicial review.  49 U.S.C. § 60119(a).

32.    Alternatively to the administrative enforcement process, PHMSA may institute an enforcement action in federal district court.  *See id.* § 60120(a)(1) ("At the request of the Secretary of Transportation, the Attorney General may bring a civil action in an appropriate district court of the United States to enforce" pipeline safety laws and regulations.); *see also* 49 C.F.R. § 190.235. The case is instituted by the Attorney General of the United States on behalf of PHMSA, and the district court is empowered to award appropriate relief including civil penalties, injunctive relief, and punitive damages.  49 U.S.C. § 60120(a)(1).

33.    In actions instituted in district court, the typical processes and protections attendant to the federal court forum apply, including the Federal Rules of Civil Procedure and the Federal Rules of Evidence; due process; and the right to a jury trial.

### C.    An Unfortunate Accident at PEPL's Borchers Station

34.    On March 26, 2020, two PEPL fieldmen were engaged in launching and retrieving cleaning pigs at PEPL's Borchers Station.  Cleaning pigs are devices used to sweep debris and other materials from the interior of a pipeline.

35.    Around 2:00 p.m., the fieldmen were attempting to retrieve one of the cleaning pigs from the pig receiver, but the cleaning pig was stuck inside the barrel.  The receiver door was open, and the cleaning pig became dislodged, traveled out of the receiver barrel, and struck one of the fieldmen.  Tragically, the struck fieldman passed away as a result of his injuries.

### D.    PHMSA's In-House Enforcement Proceeding Against PEPL

36.    In the two days following the accident, PHMSA conducted an on-site investigation at Borchers Station.  PHMSA then waited approximately three years, until June 15, 2023, to issue an NOPV to PEPL, initiating an enforcement proceeding.[6]  Among other things, the NOPV alleged that PEPL failed to follow its internal manual of written safety procedures in violation of 49 C.F.R. § 192.605(a).  The NOPV also proposed monetary civil penalties.

37.    On information and belief, PHMSA began drafting the NOPV and preparing its enforcement case before its investigation of the incident and fact-finding had even concluded.  On information and belief, a member of PHMSA's enforcement staff, Ms. Terri Binns, began drafting the NOPV before the Accident Investigation Division finished its report in November 2020.

38.    Therefore, on information and belief, PHMSA pre-determined that PEPL had committed violations and then looked for documents supporting those conclusions post hoc.

---

[6] The enforcement proceeding was case number CPF 4-2023-011-NOPV.

39.     Despite determining early on that it would pursue an enforcement action against PEPL, PHMSA did not request the documents relevant to allegations in the NOPV until April 20, 2023—nearly three years later and approximately two months before serving the NOPV.

40.     PEPL responded to and contested the NOPV by requesting a hearing.  *See* 49 C.F.R. §§ 190.208(a)(4), (b)(4).

41.     Although the regulations require PHMSA's Presiding Official to "conduct a fair and impartial hearing," *id.* § 190.212(c), PEPL's experience was anything but.  At the hearing, it became apparent that not "all agency records pertinent to the matters of fact and law asserted" had been provided to PEPL.  49 U.S.C. § 60117(b)(1)(C).  For example, Greg Ochs, a former supervisor in PHMSA's Office of Pipeline Safety, relied on certain work history reviews in his questioning of a witness.  Those reviews were not in the case file and, although Mr. Ochs stated during the hearing that he would provide them to PEPL, he never did.

42.     Indeed, throughout the administrative enforcement proceeding, PEPL's due process rights were repeatedly violated.  For example, PEPL repeatedly requested that PHMSA produce the agency's Civil Penalty Worksheet in its native and non-password protected format, so that PEPL could understand how the civil penalties proposed against it were being calculated.  PHMSA, however, refused to provide the Worksheet in the format requested.  As a result, PEPL was unfairly denied access to information it needed to present its defense.

43.     Furthermore, on information and belief, the Presiding Official at PHMSA was engaging in *ex parte* communications with agency enforcement officials, in violation of PHMSA's regulations and PEPL's due process rights.

44.     The improprieties in the administrative enforcement proceeding forced PEPL to bring suit in the Northern District of Texas, raising these concerns and alleging, *inter alia*, that

PHMSA's administrative proceeding violated PEPL's due process rights and its Seventh Amendment right to a jury trial and was based on an unconstitutional delegation of legislative power. *See* Compl., *Panhandle Eastern Pipe Line Co. v. PHMSA*, No. 2:25-cv-0023-Z (N.D. Tex. Jan. 31, 2025).

45.    On April 22, 2025, PHMSA terminated the administrative proceeding and filed the instant suit in this Court on the same day as a result of PEPL's lawsuit against PHMSA in this District. PEPL had already spent nearly two years defending itself in the administrative action.

**CLAIM FOR RELIEF**

**Counterclaim: The Pipeline Safety Act Unconstitutionally Delegates Legislative Power to PHMSA to Bring Enforcement Actions in Federal Court or in an Administrative Proceeding**

46.    Paragraphs 1 through 45 immediately above are incorporated by reference as if fully set forth herein.

47.    Article I of the Constitution provides that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States." U.S. CONST. art. I, § 1.

48.    The Constitution confers "<u>all</u> legislative Powers" to Congress, *id.* (emphasis added), and "[a]ccompanying that assignment of power to Congress is a bar on its further delegation." *Gundy v. United States*, 588 U.S. 128, 135 (2019) (plurality opinion). "Congress cannot 'delegate to the Courts, or to any other tribunals, powers which are strictly and exclusively legislative.'" *Jarkesy I*, 34 F.4th at 460 (quoting *Wayman v. Southard*, 23 U.S. 1 (1825)). This "nondelegation doctrine is rooted in the principle of separation of powers that underlies our tripartite system of Government." *Mistretta v. United States*, 488 U.S. 361, 371 (1989). That said, "Congress may grant regulatory power to another entity . . . if it provides an 'intelligible principle' by which the recipient of the power can exercise it." *Jarkesy I*, 34 F.4th at 461 (quoting *Mistretta*, 488 U.S. at 372).

49.     In *Jarkesy I*, the relevant statutes gave the Securities and Exchange Commission ("SEC"), at its discretion, the ability to bring securities fraud actions for monetary penalties in federal court or within the agency.  The Fifth Circuit held that Congress unconstitutionally delegated legislative power to the SEC by giving it "unfettered authority to choose whether to bring enforcement actions in Article III courts or within the agency" without "an intelligible principle to guide its use" of that power.  *Id.* at 459.

50.     The Fifth Circuit articulated a two-part inquiry for determining whether there has been an unconstitutional delegation of legislative power in contravention of Article I.  Under that framework, the Court considers: "(1) whether Congress has delegated power to the agency that would be legislative power but-for an intelligible principle to guide its use and, if it has, (2) whether it has provided an intelligible principle such that the agency exercises only executive power."  *Id.* at 461.

51.     The instant case implicates *Jarkesy I*.  Congress has granted PHMSA the power to assign the adjudication of an enforcement action to an agency proceeding or to an Article III court.  *See* 49 U.S.C. §§ 60120, 60122.  And like the statutes at issue in *Jarkesy I*, the Pipeline Safety Act provides no guidance whatsoever as to how PHMSA should make the decision to proceed in one forum or the other in any given case; the choice is left to PHMSA's absolute and "unfettered discretion."  *Jarkesy I*, 34 F.4th at 461.

52.     Although the Pipeline Safety Act authorizes PHMSA to initiate enforcement proceedings either in-house before the agency itself or in federal court through a request to the Attorney General of the United States, *see* 49 U.S.C. §§ 60120, 60122, the statute does not provide any guidelines for how PHMSA should choose one forum versus the other.

53.     When PHMSA issued the NOPV to PEPL and initiated the administrative enforcement proceeding,  PHMSA did not explain how it determined that it would initially proceed through an in-house agency action rather than through a federal lawsuit.  Nor has it explained the reason for its three-year delay in initiating enforcement proceedings.

54.     Once faced with a lawsuit, PHMSA changed tack on its enforcement strategy.

55.     Because the Pipeline Safety Act provides no guidance regarding which forum PHMSA should select in any given enforcement action, PHMSA was free to simply change fora when the problematic nature of the agency proceeding was brought to light.

56.     Indeed, the very fact that PHMSA withdrew its administrative enforcement proceeding and filed the instant action in this Court demonstrates that PHMSA has "unfettered discretion" to select its preferred forum.  *Jarkesy I*, 34 F.4th at 461.  That is a delegation of legislative power without an intelligible principle to guide its use.

57.     PEPL is entitled to a judgment under the Declaratory Judgment Act and Federal Rule of Civil Procedure 57 declaring that the Pipeline Safety Act's delegation of unfettered legislative power to select between administrative enforcement or enforcement by means of a lawsuit in federal court is unconstitutional.

## PEPL'S PRAYER FOR RELIEF

**WHEREFORE**, PEPL respectfully requests that the Court enter each of the following forms of relief:

    **a.**     Dismiss Plaintiff's Original Complaint with prejudice;

    **b.**     Grant the declaratory relief set forth above;

    **c.**     Enter judgment against Plaintiff and in favor of PEPL;

    **d.**    Award attorneys' fees, costs, and expenses that PEPL has incurred in connection with this action; and

    **e.**    Award such other and further relief as the Court deems necessary and appropriate.

Dated: July 8, 2025          Respectfully submitted,

                    */s/ George M. Kryder*

| | |
|---|---|
| Vince Murchison | George M. Kryder |
|   Texas Bar No. 14682500 |   Texas Bar No. 11742900 |
| Vince.Murchison@pipelinelegal.com |   gkryder@velaw.com |
| Haley O'Neill | VINSON & ELKINS LLP |
|   Texas Bar No. 24095105 | 2001 Ross Avenue |
|   haley.oneill@pipelinelegal.com | Dallas, Texas 75201 |
| MURCHISON O'NEILL, PLLC | Telephone: (214) 220-7719 |
| 325 North Saint Paul Street | Facsimile: (214) 999-7719 |
| Suite 2700 | |
| Dallas, Texas 75201 | William S. Scherman* |
| Telephone: (214) 716-1923 |   D.C. Bar No. 384860 |
| Facsimile: (844) 930-0089 |   wscherman@velaw.com |
| | Jason J. Fleischer* |
| |   D.C. Bar No. 978810 |
| |   jfleischer@velaw.com |
| | VINSON & ELKINS LLP |
| | 2200 Pennsylvania Avenue NW |
| | Suite 500 West |
| | Washington, D.C. 20037 |
| | Telephone: (202) 639-6550 |
| | Facsimile: (202) 639-6604 |
| | |
| | *\*Pro Hac Vice* application forthcoming |

## CERTIFICATE OF SERVICE

    I certify that on July 8, 2025, a true and correct copy of the foregoing instrument was served on all counsel of record using the Court's electronic filing system.

                    */s/ George M. Kryder*

                    George M. Kryder